MORGAN *v.* RUSSELL.

Opinion delivered January 23, 1922.

LANDLORD AND TENANT—PRIORITY OF LANDLORD'S LIEN.—Where a tenant sublet a portion of the leased premises, the landlord, having liens for rent and for supplies, may apply the tenant's crop to payment of the supplies, and apply the proportionate part of the subtenant's crop to the lien for rent, as against one having a mortgage on the subtenant's crop; the landlord's liens being superior to that of the mortgagee.

Appeal from Columbia Circuit Court; *C. W. Smith,* Judge; reversed.

STATEMENT OF FACTS.

Appellees brought this suit against appellants to recover judgment for the sum of $218.16, with the accrued interest alleged to be due them for the appropriation by appellants to their own use of three bales of cotton upon which appellees had a mortgage.

The material facts necessary to a determination of the issues raised by the appeal are substantially as follows:

Gunter Brothers rented a farm, comprising 150 acres of land in cultivation, to Hadley McDowell for the year 1919, for the sum of $1,000; $150 of this amount was to be paid in improvements, and the remaining $850 was evidenced by a rent note due December 18, 1919. Gunter Brothers also furnished supplies to Hadley Mc-Dowell, so that at the end of the year he owed them for supplies and rent the sum of $2,475.06. McDowell raised a crop principally of cotton, and began to pay the proceeds of the cotton as gathered by him to Gunter Brothers during the latter part of the year 1919. He paid them the sum of $1,959.07. Gunter Brothers applied the proceeds of the sale of the cotton raised on their place by their tenant, first, to the payment of his supply account, and the balance towards the payment of his rent. Hadley McDowell sub-rented twenty-five acres of the land to John Morgan for a third of the corn and a fourth of the

cotton. John Morgan lived on appellee's farm, which was also in Columbia County, Arkansas. He gave appellees a mortgage on all the cotton and corn which he should make or cause to be made during the year 1919 in Columbia County, Arkansas, to secure them for supplies furnished him during that year. At the end of the year Morgan owed appellees a balance of $750 on his mortgage indebtedness. Morgan raised something over two bales of cotton on the land rented by him from McDowell. He finished out the third bale with 720 pounds of seed cotton that he raised on the farm of appellees.

Gunter Brothers took the three bales of cotton which Morgan raised, as above stated, after it was ginned. Morgan also got twenty sacks of fertilizer from Hadley McDowell which was furnished to him by Gunter Brothers. The fertilizer was used by him on the crop grown on the place of Gunter Brothers.

The jury returned a verdict in favor of appellees in the sum of $218.16, and from the judgment rendered appellants have duly prosecuted this appeal.

*McKay & Smith,* for appellant.

The defendant had a lien on Morgan's crop, which was prior and paramount to the lien of plaintiffs in an amount equal to the proportion of the entire rent that the land worked by him bears to the entire amount cultivated. C. & M. Digest, § 6898; 103 Ark. 91; 109 Ark. 552.

*Henry Stevens,* for appellee.

A debtor holding a superior lien cannot appropriate payments so as to prejudice the creditor holding a junior lien. 39 Ark. 248.

The defendant could not appropriate the cotton delivered to the payment of the note. 47 Ark. 11.

HART, J. (after stating the facts). It was the theory of the trial court that Gunter Brothers only had a lien upon the crop raised on their place by McDowell for the payment of rent which was prior to the mortgage lien of

appellees. The jury was virtually instructed that Gunter Brothers should apply all the cotton raised on their place by McDowell, their principal tenant, to the payment of the rent before they could appropriate any part thereof towards the payment of his supply account.

McDowell had sub-rented twenty-five acres of the land which he had rented from Gunter Brothers to John Morgan for a third of the corn and a fourth of the cotton. John Morgan raised something over two bales of cotton on the land sub-rented by him, which Gunter Brothers took charge of after it was ginned and applied it towards the payment of the rent due them by McDowell. This they had a right to do to the extent of the proportion of the rent for the lands cultivated by him to the whole rent. Section 6889 of Crawford & Moses' Digest gives the landlord a lien upon the crop grown upon the demised premises in any year for the rent which shall accrue for such year. Sec. 6890 gives the landlord a lien for supplies furnished his tenant. These liens are statutory and of equal dignity. Sec. 6892 provides that any person sub-renting lands shall be only held responsible for the rent of such as are cultivated, or occupied by him. Sec. 6894 provides that it shall not be lawful for any one who has leased land from one person and sub-let any portion thereof to another to take or collect rent from any such sub-tenant before final settlement with the landlord without first having obtained a written direction from the landlord. Sec. 6895 provides that if the principal tenant shall fail to pay to the landlord his rent due, the amount paid by such sub-tenant upon the written direction of the landlord shall be deducted from the *pro rata* of rent from which the land cultivated by such sub-tenant would otherwise be liable to such landlord under existing laws.

These sections show that the landlord has a lien on the crop raised by the sub-tenant for the rent of the land for his proportionate part of the rent. The theory adopted by the court below, as shown by the instructions

given to the jury, absolved the sub-tenant from any claim by the landlord for his proportionate part of the rent if the principal tenant had paid the landlord an amount equal to the rent due by him, regardless of the fact of whether he had paid his supply account or not. This construction would virtually abrogate the sections of the statute above referred to with regard to the liability of sub-renters for the payment of their proportionate part of the rent to the landlord.

Gunter Brothers had a lien on all the crops raised by their principal tenant, Hadley McDowell, for the rent and supplies due them by him. They had no lien on the crop raised by Morgan, the sub-tenant of McDowell, for the supplies furnished by them to McDowell, but they did have a lien on the crop of Morgan for his proportionate part of the rent. In other words, Gunter Brothers had the right to take all the crop raised by McDowell and apply it first to the payment of their account for supplies, if they saw fit to do so. The reason is that the statute gave them a lien for supplies as well as rent, and they might apply the proceeds of the crop raised by McDowell towards the payment of either.

McDowell sub-rented a part of the land to Morgan, and Gunter Brothers had a lien on the crop raised on this land by Morgan for the proportionate part of the rent and whatever supplies that they furnished to Morgan. But, as we have already seen, Gunter Brothers had no lien on the crop raised by Morgan for supplies furnished to McDowell. Gunter Brothers rented 150 acres of land to McDowell for a stipulated rental in money, and Mc-Dowell sub-rented 25 acres of this to Morgan for a part of the crop. The landlord had a lien upon the crop grown on all this land for the rent agreed to be paid him by his principal tenant, and this without regard to any contract or agreement between the tenant and his sub-tenant for rent. The statute limits the liability of the sub-tenant to the landlord for rent to such lands as are occupied by him, and this liability the sub-tenant can dis-

charge only by the payment of the *pro rata* amount of the rent for the land occupied by him according to the contract between the landlord and the principal tenant, and not according to the amount of rent agreed upon between the principal tenant and the sub-tenant. *Jacobson* v. *Atkins,* 103 Ark. 91, and *Storthz* v. *Smith,* 109 Ark. 552.

Any other construction would have the effect to change the contract between the landlord and the principal tenant without the consent or agreement of the landlord, and this we do not think was the intention of the Legislature in passing the act with regard to the liability of sub-renters to the landlord for their proportionate part of the rent.

It follows that the court erred in instructing the jury as indicated in the opinion, and for this error the judgment must be reversed and the cause remanded for a new trial.